Ethel S. Van Iderstine v. Commissioner.
Ethel S. Van Iderstine v. Commissioner
Docket No. 3515.
United States Tax Court
1945 Tax Ct. Memo LEXIS 314; 4 T.C.M. (CCH) 118; T.C.M. (RIA) 45039; January 30, 1945
*314 Samuel A. Adamson, Esq., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for the taxable year 1941, in the amount of $326.68. The deficiency arose as a result of the disallowance by the Commissioner of the sum of $4,228.90, deducted from gross income and claimed by petitioner as an allowable bad debt deduction under section 23(k) of the Internal Revenue Code. Petitioner has conceded that an item amounting to $500 paid for attorneys' fees and included in the above amount was included through inadvertence, and that the claimed bad debt should be reduced by that sum. The facts are stipulated by the parties and are found as stipulated. They may be summarized as follows: Findings of Fact Petitioner, an individual, resides at New York, New York. Her income tax return for the taxable year 1941 was filed with the collector for the second collection district of New York. On or about March 8, 1924, Robert Van Iderstine, hereinafter referred to as Van Iderstine, and his then wife, Ethel S. Van Iderstine, petitioner herein, *315 entered into a separation agreement. Under the terms of the agreement Van Iderstine agreed to pay petitioner $10,000 per annum in equal monthly installments, beginning April 1, 1924. To secure to his wife performance of his obligation under the separation agreement and for the purpose of making certain provisions for the benefit of petitioner and her daughter, Van Iderstine entered into a trust agreement with the Guaranty Trust Company of New York, as trustee, under which he transferred to the trustee certain life insurance policies, totaling $50,000, and certain real and personal property of an estimated value of $50,000. Under the agreement the trustee was to pay the income to Van Iderstine so long as he should keep and perform the conditions of the separation agreement. Upon his default, the trustee was to pay the petitioner so much of the income or principal as might be necessary to cure any default occasioned by the failure of Van Iderstine to make the payments required of him. Van Iderstine agreed to make good any deficiency as a result thereof. Upon the death of Van Iderstine during the lifetime of petitioner, the trustee was to pay petitioner the proceeds of the life insurance *316 policies and transfer to her all real or personal property held by it. Van Iderstine agreed to pay all taxes, assessments, insurance, interest on mortgages, and any other charges on the realty, and all premiums, assessments and other sums necessary to keep the life insurance policies in full force and effect. Upon default by Van Iderstine, the trustee had the right to pay the same out of any money, property, or securities then in its possession, and the trustee had an immediate right of action against the grantor to recover the amount paid by it, with interest, from the date of payment. Trustees' commissions and administration expenses were provided for in the trust agreement, as follows: "(a) That for its services in the premises it shall be entitled to receive and retain the same compensation and commissions as are payable to testamentary trustees under the Laws of the State of New York, together with its reasonable counsel fees, costs and expenses, and the party of the first part hereby agrees to pay the same." Van Iderstine died August 7, 1933, leaving a will which was probated in the Surrogate Court of New York County. Testamentary letters were issued to Katherine Van Iderstine, *317 who was the widow of decedent, and Wendell P. Barker. After the death of said Barker in April 1941, the estate was administered solely by Katherine Van Iderstine as surviving executrix. The trustee paid over and conveyed to petitioner the corpus of the trust in the amount of $96,806.04. On April 7, 1934, which was the date of the last distribution made by the trustee to petitioner, the trustee retained the amount of $2,016.18 for its commissions, deducted the sum of $1,750 paid by it for legal services, and deducted the sum of $407.52 for other minor items paid by the trustee between the years 1924 and 1933. The total sum deducted by the trustee amounted to $4,173.70. The petitioner, in May 1934, filed with the executors a proof of claim against the Van Iderstine estate in the amount of $17,471.22. Of that sum $13,297.52 represented an amount alleged to be due petitioner under the separation agreement, and the balance, $4,173.70, represented the deduction made by the trustee which was claimed by the petitioner to be chargeable against the estate under the terms of the trust agreement. Due to the condition of the estate it was not finally settled until December 31, 1941. A parcel *318 of realty forming a portion of the trust corpus transferred by the trustee to petitioner was situated in the State of New Jersey, and was subject to an inheritance tax in that state. On April 25, 1940, petitioner paid the sum of $456.74 in order to obtain a free and clear title to the property. This sum was added by petitioner to the amount of $4,173.70 paid by the trustee, making her total claim under the trust agreement, the sum of $4,630.44. On December 31, 1941, petitioner entered into an agreement with Katherine Van Iderstine, individually and as surviving executrix under the will whereby it was agreed that the money remaining in the estate should be divided equally between the two claimants. Under that agreement, petitioner received as the only and final distribution from the estate the sum of $3,788.06. Of that sum petitioner allocated $901.54 in reduction of her claim under the trust agreement, reducing said amount to $3,728.90. The balance of th amount received from the estate was applied by petitioner upon her claim for arrears under the separation agreement. As respects the sum of $3,728.90, said to be chargeable against Van Iderstine or his estate, petitioner claims a *319 bad debt deduction which has been disallowed by the respondent. No similar claim has been made by petitioner in connection with the alimony arrears under the separation agreement. Opinion ARUNDELL, Judge: Petitioner contends that upon the death of Van Iderstine the trust property belonged to her; that when the trustee deducted therefrom the expenses here in question it placed petitioner in the position of having paid debts properly chargeable against the Van Iderstine estate since, under the trust agreement, Van Iderstine was obligated to pay these expenses. It is argued that petitioner was subrogated to the right of the trustee, and that when it became apparent in 1941 that the Van Iderstine estate was unable to pay the expenses, a deductible bad debt came into existence. The underlying principal upon which the argument is based is that a taxpayer is entitled to deduct a loss attributable to a bad debt ascertained to be worthless, if the debt arises from a capital outlay, involving no income at all. We find no merit in petitioner's argument, Upon the death of Van Iderstine petitioner became entitled, not to the gross estate then in the hands of the trustee, but to the net estate *320 that would thereafter be paid over or conveyed to her. Under the trust agreement the trustee was entitled to receive and retain the same compensation and commissions as are payable to testamentary trustees under the laws of the State of New York, together with its reasonable counsel fees, costs and expenses. This provision secured to the trustee the rights accorded by section 285 of the New York Surrogate's Court Act. The added clause whereby Van Iderstine agreed to pay such expenses may have given rise to an action against him upon his failure to do so, but his failure to pay does not per se give rise to a deductible bad debt within the meaning of the statute. The result of the arrangement was that petitioner became entitled to receive the trust property in the hands of the trustee at the death of the decedent, less the expenses here involved which were properly chargeable against the fund. Petitioner received less than Van Iderstine had agreed to pay her, but she was out of pocket nothing. There was no outlay of cash or property by petitioner by which to measure a loss. Pearl A. Long, 35 B.T.A. 479, aff'd. 96 Fed. (2d) 270, certiorari denied 305 U.S. 616; *321 Thomas v. Commissioner, 100 Fed. (2d) 408. Nor can petitioner find support for her argument in . Van E. Thompson, 10 B.T.A. 1125. The capital which gave rise to the bad debt deduction in that case was the value of the property actually distributed to and received by the taxpayer. It was not the gross value of the property in the hands of the estate before the inheritance was distributed to him. We do not think the money petitioner personally paid to the State of New Jersey to release property from the lien for inheritance taxes can be given a different treatment. If the trustee had paid the taxes from funds in its possession, as it was authorized to do, the expenditure would have stood on the same footing as the expenses above considered. The position of the petitioner would be the same in either event, for she would receive less than it had been agreed she should receive. Decision will be entered under Rule 50.